UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERRICK DESHAWN MILLER,
DARREN WALLACE CHAPPELL, and
STACEY SIMEON HALL,

        Plaintiffs,        Civil Action No. 15-12500
                                        Honorable Marianne O. Battani
                                        Magistrate Judge David R. Grand

v.

HANWHA L&C MONROE PLANT, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS
HANWHA AND DERON'S MOTION FOR SUMMARY JUDGMENT AS TO
PLAINTIFF CHAPPELL [44]**

      This is an employment discrimination case brought pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000 *et seq.*) and 42 U.S.C. § 1981 by *pro se* Plaintiffs Derrick Deshawn Miller, Darren Wallace Chappell, and Stacey Simeon Hall[1] against Defendants Hanwha L&C Monroe Plant ("Hanwha"), Cathy Garello-Deron ("Deron"), Chang-Bum Kim, Sang Mook Lee, Dennis Kirkland, and the Equal Employment Opportunity Commission and four

---

[1] Plaintiffs Miller, Chappell, and Hall filed separate actions. On July 14, 2015, Plaintiff Miller filed a complaint in this Court (Doc. #1), although in the complaint, he references a "related case" in the Circuit Court for the County of Monroe, in the State of Michigan, Case Number 15-137917-cz, before Judge Daniel S. White. (*Id.* at 10-11). On November 4, 2015, Plaintiff Miller filed an amended complaint, adding Cathy Garello-Deron as the Defendant who will replace the Defendant previously identified as "Unknown Human Resources" and "Unknown Secretary." (Doc. #11 at 1). Plaintiffs Chappell and Hall filed their complaints in the Circuit Court for the County of Monroe, in the State of Michigan. (Case No. 15-12591, Doc. #1; Case No. 15-14272, Doc. #1). Defendants filed Notices of Removal – on July 23, 2015 in Plaintiff Hall's case and on December 7, 2015 in Plaintiff Chappell's case – removing these cases to this Court. (*Id.*).

On March 30, 2016, these three cases were consolidated under lead case number 15-12500 by the Honorable Marianne O. Battani's Order Granting Plaintiff Miller's Motion to Consolidate and Dismissing Plaintiff Chappell's and Hall's Motions to Consolidate as Moot. (Doc. #24).

of its employees.[2] Plaintiffs Miller, Chappell, and Hall allege that Defendants failed to employ them because of race discrimination. An Order of Reference was entered by the Honorable Marianne O. Battani on November 10, 2015, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). (Doc. #13).

Presently before the Court is Defendants Hanwha and Deron's Motion for Summary Judgment as to the claims brought by Plaintiff Chappell.[3] (Doc. #44). The Court finds that the facts and legal issues are adequately presented in the docket filings, and it declines to order a hearing at this time.

## I. RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants Hanwha and Deron's Motion for Summary Judgment **(Doc. #44)** be **GRANTED**.

## II. REPORT[4]

### A. Factual Background

---

[2] A Stipulation and Order of Dismissal with Prejudice as to Defendants Gail Cober, Arlene McFadden, Lolita Davis, Beverly Clark and the Equal Employment Opportunity Commission ("EEOC") was entered in Plaintiff Miller's case and Plaintiff Hall's case (before the cases were consolidated). (Doc. #22; Case No. 15-12591, Doc. #4). These individuals and the EEOC were not named as defendants in Plaintiff Chappell's initial case; he commenced his action against Defendants Hanwha, Deron, and Chang-Bum Kim. (Case No. 15-14272). Defendants Chang-Bum Kim, Sang Mook Lee, and Dennis Kirkland were also dismissed (or have been recommended to be dismissed) from the case as to all three plaintiffs because these three defendants were never properly served. (Doc. #73; Case No. 15-12591, Doc. #12).

[3] On September 21, 2016, the undersigned issued a Report and Recommendation to grant Defendants Hanwha and Deron's motions for summary judgment as to Plaintiffs Miller and Hall. (Doc. #41). The Honorable Marianne O. Battani adopted this Report and Recommendation on March 30, 2017. (Doc. #54).

[4] Chappell's complaint is practically identical to the complaints filed by Miller and Hall, so much of the overlapping factual background and analysis is taken from the Court's September 21, 2016 Report and Recommendation. (Doc. #41). The citations have been updated to reference the appropriate documents.

In his complaint, Chappell alleges that on January 22, 2014, he applied for a "laborer position" at Hanwha, a manufacturing company. (Case No. 15-14272, Doc. #1-2 at 4). He contends that every two weeks, he followed up with the secretary "regarding the status of [his] application (resume)." (*Id.*). Despite allegedly being "informed that the company was hiring individuals for the 1st and 2nd shift" and that he would receive a call about "the status" of his resume, Chappell never heard anything. (*Id.*). A few weeks later, he called and was told that Hanwha was not hiring. (*Id.*). Chappell alleges that "[t]his is totally untrue" because a friend of a friend of his, who is Caucasian, applied for a position at Hanwha and was hired "immediately." (*Id.*).

Chappell believes he was "denied hiring due to his race (African American)." (*Id.* at 5). He alleges that Defendants failed to recruit and hire African Americans "for entry-level (non-skilled) positions" in "clear violation" of Title VII (42 U.S.C. § 2000 *et seq.*) and 42 U.S.C. § 1981. (*Id.*).

1.   Chappell Submitted his Resume to Hanwha

Chappell testified that on April 20, 2014,[5] he applied to work at Hanwha by submitting a resume to Deron, a human resources officer, in person. (Doc. #44-3, "Chappell Dep." at 18-19, 52). He told Deron his name, and she gave him her business card.[6] (*Id.* at 52-53). He went to Hanwha by himself. (*Id.* at 52). Chappell's father had suggested he apply. (*Id.* at 24-26). His father worked at Meijer Distribution Center and told Chappell that a co-worker called Corey

---

[5] As Defendants point out, this date is inconsistent with the January 22, 2014 application date that appears in the complaint. (Doc. #44 at 8-9; Case No. 15-14272, Doc. #1-2 at 4). Chappell stated that this inconsistency "must have just been a typo." (Doc. #44-3, "Chappell Dep." at 58).

[6] When Chappell was asked if there was any communication exchanged between him and Deron, he responded: "Just my name, and that's about it, my resume. I got the card so I could call and follow up on the job." (Chappell Dep. at 53).

3

Metdepenningen had applied to work at Hanwha. (*Id.* at 15, 21, 24-26). It was Chappell's understanding that before he submitted his resume, Metdepenningen had either already been interviewed or hired by Hanwha. (*Id.* at 24-26).

Chappell testified that he called Hanwha a few days after he gave Deron his resume. (*Id.* at 53). He left a voicemail with the human resources department indicating he was "check[ing] up on the job" and asked that he be called back. (*Id.*). Chappell "called a few times [after that] and never got to talk to anybody"; instead, he always got a voicemail recording. (*Id.* at 54).

At some point between April and October 2014, Chappell took another copy of his resume to Hanwha. (*Id.*). Like the first time, he was by himself and simply handed in his resume and left. (*Id.* at 55). He believed that they were hiring again, based on "word of mouth" and an article in the newspaper announcing the opening of Hanwha's new factory. (*Id.* at 54). In addition, people he knew, including Hall, encouraged him to turn in his resume. (*Id.*).

On October 5, 2014, Chappell submitted his resume to Hanwha a third time. (*Id.* at 52, 55). He applied in the "exact same way": by dropping off his resume and then leaving. (*Id.* at 55). Chappell's testimony recounts no substantive conversations between him, Deron, or any other Hanwha employee regarding his resume or the hiring process.

### 2. Chappell's Resume/Employment History

Chappell's resume indicates that he graduated from high school in 2007. (Doc. #44-5 at 3). Chappell testified that he completed high school in four years and attended the University of Toledo for a year and a half. (Chappell Dep. at 9-10). He explained that he did not mention his time at college in his resume because he didn't graduate. (*Id.* at 33). Chappell's resume also lists his employment history from April 2011 through October 2014. (Doc. #44-5 at 2-3; Chappell Dep. at 34, 55). The most recent job on his resume was at FHI Distribution Services

("FHI") in Newport, Michigan, where he had worked since December 2013 through when he applied to Hanwha. (Doc. #44-5 at 2; Chappell Dep. at 32, 38-39). There, he made between $5.00/hour and $20.00/hour. (*Id.*). His resume indicates that prior to this, he worked in landscaping in Florida from July 2013 to November 2013. (Doc. #44-5 at 2). While in Florida, he also worked for Ranstad Temporary Service ("Ranstad") between January 2013 and July 2013 doing telecommunications, landscaping, and drywall. (*Id.*; Chappell Dep. at 37).

From December 2012 to January 2013, Chappell worked for a moving company in Florida. (Doc. #44-5 at 3). Even though it was a full-time position, he testified that he left after two months because there ended up being only one or two days of work a week. (*Id.* at 36-37). Before that job, Chappell was assigned by a temporary staffing company to a job at Hydro, an aluminum factory in Florida. (*Id.* at 34-35). Chappell worked at Hydro from July 2012 to October 2012, when he was laid off. (Doc. #44-5 at 3; Chappell Dep. at 34). The last job listed on Chappell's resume is a part-time position at a Florida Winn Dixie grocery store, where he prepared food, cleaned, and provided customer service. (*Id.*). The time frame of this job was left blank, but Chappell testified that he worked there from April 2011 to July 2012. (Chappell Dep. at 34). When asked why he omitted these dates, Chappell responded: "I just probably missed it, just like I've got all types of typos in there." (*Id.*).

During his deposition, Chappell admitted that he has no experience with machine repair or machine maintenance. (*Id.* at 47-48). Although he has driven a hi-lo, this skill is not reflected in his resume; he explained that he simply listed the name of the temporary service (Ranstad) through which he operated a hi-lo. (*Id.* at 48). Furthermore, he conceded that when he gave Deron his resume, he did not know anyone who worked at Hanwha, so no one inside of Hanwha knew his work ethic or was in a position to recommend him. (*Id.* at 48-49).

5

### 3. Chappell's Allegations/Understanding of the Hiring Process

Chappell testified that the purpose of a resume is for an applicant to communicate his experience and "who you are" to the employer. (*Id.* at 39). He understood that an employer reads all of the submitted resumes, selects applicants for interviews, and then decides who to hire (with reference checks and drug tests carried out at some point). (*Id.* at 40). He knew others were also applying to work at Hanwha and that typically the number of applicants is larger than the number of available positions. (*Id.* at 39). He didn't dispute that Hanwha had received approximately 370 resumes. (*Id.*).

Chappell confirmed that his complaint is based on his resume not making it to the next stage of the application process and him not being selected to interview at Hanwha. (*Id.* at 40-41). He recognized that Hanwha was a manufacturing plant where its employees would be required to operate machinery. (*Id.* at 41). He thought his jobs at FHI, Ranstad, and Hydro were all relevant to Hanwha's manufacturing operation. (*Id.* at 41-42). Still, he conceded that the details about these jobs and their relevance to a job at Hanwha were not in his resume and "not on the record." (*Id.* at 42). When asked what he thinks would prompt someone at Hanwha to select him for an interview, Chappell responded that his eight years of work experience in factories (referring to his jobs at FHI, Hydro, and possibly Ranstad) and restaurants sets him apart from other applicants. (*Id.* at 43). He added: "I'm just trying to find somewhere that I can grow at and make some real money." (*Id.*).

Chappell understood that dates of employment on a resume communicate to the employer how long an applicant has kept a particular job. (*Id.*). He agreed that because he omitted the dates in which he worked at Winn Dixie, it appears from his resume that he has held every job for six months or less. (*Id.* at 43-44, 69). Chappell was asked if he thought that Hanwha valuing

6

stability, longevity, and investing in its training of employees was a "false reason" for not selecting him to interview – where his resume did not reflect stability and longevity. (*Id.* at 68). He responded: "I still think that is not a reason. I left out [the Winn Dixie job]. The longest job that I've kept for a year-and-a-half almost, I left that out, but that is still no reason not to give me a chance . . . ." (*Id.*). Chappell stated that despite this omission, Deron should have perceived that he had worked there for more than one year. (*Id.*). Moreover, he believes he should have had a leg up on the 370 others who applied because he turned in three copies of his resume, as opposed to just one. (*Id.* at 68-69).

Chappell testified that he had no specific knowledge as to how many African Americans are employed by Hanwha as hourly employees at its Monroe plant. (*Id.* at 55). He likewise had no facts to dispute that between April 20, 2014 through June 1, 2015, six of the fourteen offers of employment that Hanwha extended for hourly positions – or 42.8 percent – were made to African Americans. (*Id.* at 56). Similarly, he had no facts to dispute that out of the fourteen people who were offered a job, two out of three of those who failed the drug test were African American. (*Id.*). Nor did he have facts to dispute that four out of the eleven people who were actually hired (excluding the three who did not pass the drug test) – or 36.3 percent – were African American. (*Id.* at 56-57). He acknowledged that out of the 370 applicants, both African Americans and Caucasians were not called for an interview. (*Id.* at 57). At the time of his deposition, he had not identified a witness to testify as to a statistical analysis of African Americans versus Caucasians who were not called for an interview. (*Id.*).

In his complaint, Chappell takes issue with Metdepenningen being hired by Hanwha, when he himself was not even given an interview. (*Id.* at 60-61). After reviewing

7

Metdepenningen's resume[7] (Doc. #44-6) and comparing it with his own (Doc. #44-5), Chappell testified that he still should have been asked to interview because "all [Metdepenningen] has is more writing. I probably should have written a little bit more on mine. Other than that, he worked at a movie theater, and I've worked at factories for eight years. My resume shouldn't have made a difference. I still should have [been given] a chance." (Chappell Dep. at 64).

When asked if he had identified the resume of an individual hired by Hanwha that he felt reflected qualifications inferior to his, so that he felt he should have been hired in their place, Chappell stated: "I don't know anybody that works over there besides Charles Lee, and even his resume is not stronger than mine. I mean [it] might have more words, but it's not really stronger, and it's really no difference." (*Id.*; *see* Doc. #44-7). Chappell acknowledged that Lee is African American, but disputed that Hanwha hiring Lee undermines his racial discrimination claim. (Chappell Dep. at 64-65). According to Chappell, Lee "is mixed, he's lighter than [Chappell]. So . . . there's a problem there." (*Id.* at 65). Other than Lee, Chappell stated that there were a "whole bunch" of other resumes that resulted in hires, but he couldn't remember their names. (*Id.*). Ultimately, he testified that he was unable to tell who was hired "just by looking at the resumes" and that he "can't name five African-Americans from around here" that work at Hanwha. (*Id.* at 66). Despite being unable to identify the resume of a person with inferior qualifications who was hired, Chappell again stated that he didn't see a reason why his resume wasn't picked among the others for an interview, especially where he submitted his resume more

---

[7] Metdepenningen's resume reflects that he attended Macomb County Community College, has an associate's degree, has experience driving a pallet jack, and has been certified to operate a sit-down and stand-up forklift and a shredding baller. (Doc. #44-6; Chappell Dep. at 61-63). His resume also reflects continuous employment from 2007 through 2014 (including when he was in school), with detailed descriptions of his duties at Meijer Distribution Center, Gateway Recycling, and Phoenix Theaters. (Doc. #44-6; Chappell Dep. at 62-63). Moreover, his resume lists volunteer work and extracurricular activities. (Doc. #44-6 at 3; Chappell Dep. at 63).

8

than once and kept calling Hanwha.[8]  (*Id.* at 65).

### B.  Defendants Hanwha and Deron's Motion for Summary Judgment

Hanwha and Deron argue that they are entitled to summary judgment because there is no question of fact that their failure to interview and ultimately hire Chappell was not due to race discrimination.  (Doc. #44 at 19).  Specifically, Hanwha and Deron argue that Chappell cannot establish a *prima facie* case of race discrimination (*Id.* at 19-22) and cannot show that Hanwha and Deron's reasons for bypassing his resume and not hiring him are pretextual.  (*Id.* at 22-23).

### C.  Standard of Review

Federal Rule of Civil Procedure 56 provides:  "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011).  A fact is material if it might affect the outcome of the case under governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the court assumes the truth of the non-moving party's evidence and construes all reasonable

---

[8] On January 18, 2017, Chappell, Miller, and Hall filed a document entitled "Complaint about Perjury." (Doc. #48).  They allege that Defendants (Deron in particular), their attorney, William Pilchak, "and others" are "committing 'perjury' in this court [proceeding]" and carrying out actions "done to mislead this Court."  (*Id.* at 2-3).  Plaintiffs request that an investigation and prosecution be initiated against Deron and Pilchak for mail fraud, computer fraud, wire fraud, and for the violation of 18 U.S.C. §§ 1621 or 1623, and 28 U.S.C. § 1746.  (*Id.* at 3).  These claims apparently involve an "ICAT" document (possibly referring to an "Internet Criminal Access Tool") that allegedly contained "false or misleading" information about Hall's criminal history, and that pursuant to a court order was not supposed to be shared.  (*Id.* at 2-3).  But Plaintiffs do not attach a copy of the document in question to their filing, and the Court has already explained that it was Hall who raised his criminal history with Deron, and that nothing in Deron's handling of that information entitled him to any relief.  (Doc. #41 at 9, 12, 21).  There has been no showing whatsoever of any "perjury" or even improper or unethical conduct by Deron, Defendants, or their attorney in connection with Hall's criminal history.  Plaintiff's "Complaint about Perjury" has no bearing on the motion for summary judgment presently before the Court as to Chappell's claims, and the Court will not consider this filing further.

inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).

**D. Analysis**

Reading his complaint generously, the Court finds that Chappell alleges that Hanwha and Deron's failure to hire him violated Title VII (42 U.S.C. § 2000 *et seq.*) and 42 U.S.C. § 1981. Title VII of the Civil Rights Act of 1964 "tolerates no racial discrimination, subtle or otherwise." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973) (holding modified by *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993)). It was enacted "to assure equality of employment opportunities by eliminating those practices and devices that discriminate on the basis of race, color, religion, sex, or national origin," *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 457-58 (1975) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974)), and that "have

fostered racially stratified job environments to the disadvantage of minority citizens." *McDonnell Douglas Corp.*, 411 U.S. at 800. In particular, § 2000e-2 "generally prohibits racial discrimination in any employment decision." *Id.* at 796. Title VII "creates statutory rights against invidious discrimination in employment and establishes a comprehensive scheme for the vindication of those rights." *Johnson*, 421 U.S. at 457-58. "In relevant part, § 1981 states '[a]ll persons . . . shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.'" *Aquino v. Honda of Am., Inc.*, 158 F. App'x 667, 673-74 (6th Cir. 2005).

The Sixth Circuit has noted that "[t]he elements of [a] *prima facie* case as well as the allocations of the burden of proof are the same for employment claims stemming from Title VII and § 1981." *Id.* at 673-74 (citing *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004)). A plaintiff may establish a discrimination claim "either by introducing direct evidence of discrimination, or by proving circumstantial evidence which would support an inference of discrimination." *Id.* (citing *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000)). Where a plaintiff is relying on circumstantial evidence, the Sixth Circuit

> has long adopted the *McDonnell Douglas* rule that a plaintiff may establish a *prima facie* case of discrimination by showing: (1) he is a member of a protected class; (2) he was qualified for his job and performed it satisfactorily; (3) despite his qualifications and performance, he suffered an adverse employment action; and (4) he was replaced by a person outside the protected class *or* was treated less favorably than a similarly situated individual outside his class.

*Id.* (citing *Johnson*, 215 F.3d at 572-73; *McDonnell Douglas Corp.*, 411 U.S. at 802-03) (emphasis in original). "The facts necessarily will vary in Title VII cases," so the *prima facie* proof a plaintiff must show "is not necessarily applicable in every respect to differing factual

11

situations." *McDonnell Douglas Corp.*, 411 U.S. at 802 n.13. Therefore, in a failure-to-hire case, the plaintiff carries the burden of showing:

> (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*Id.*

If the plaintiff satisfies this *prima facie* test, the burden shifts to the defendant, who must "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Aquino*, 158 F. App'x at 674-75 (citing *Johnson*, 215 F.3d at 573); *McDonnell Douglas Corp.*, 411 U.S. at 802. If the defendant carries this burden, the burden shifts back to the plaintiff, who "must introduce sufficient evidence to create a genuine issue of material fact that the proffered reason was merely a pretext to hide unlawful discriminatory motives." *Aquino*, 158 F. App'x at 674-75. The plaintiff does this "by showing that (1) the stated reasons had no basis in fact, (2) the stated reasons were not the actual reasons, or (3) the stated reasons were insufficient to explain the defendant's actions." *Id.* at 675. It is not sufficient for the plaintiff "to disprove the employer's asserted reason; rather the plaintiff must prove by a preponderance of the evidence that the employer's decision *was in reality racially premised*." *Thomas v. Hoyt, Brumm & Link, Inc.*, 910 F. Supp. 1280, 1286 (E.D. Mich. 1994) (internal citation omitted) (emphasis in original).

Even when a plaintiff makes a *prima facie* showing of racial discrimination under the *McDonnell Douglas* "burden-shifting framework," "the plaintiff must ultimately prove that [he] was a victim of intentional discrimination." *Macdonald-Bass v. JE Johnson Contracting, Inc.*, No. 09-11445-BC, 2010 WL 2990100, at *7 (E.D. Mich. July 28, 2010) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000)). "Accordingly, in the summary

12

judgment context, 'a plaintiff must produce enough evidence that a jury could reasonably reject the employer's explanation for its decisions.'" *Id.* (citing *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 883 (6th Cir. 1996)).

### 1. Chappell has not Shown a *Prima Facie* Case of Racial Discrimination in the Failure-to-Hire Context

Because Chappell has not provided direct evidence of racial discrimination, the Court will use the *McDonnell Douglas* framework to analyze his proffered circumstantial evidence.

#### a. *Chappell has not Shown that he was Qualified for the Job for which Hanwha was Hiring*

Chappell has not demonstrated the second element needed to establish a *prima facie* case of racial discrimination in the failure-to-hire context: that he applied and was qualified for the job for which Hanwha was seeking applicants. Although on April 20, 2014, he gave Deron his resume to apply for an unskilled job at Hanwha, there is no evidence in the record that he was qualified for the job.

In 2014, Hanwha considered applicants to be qualified if they "showed stability and steady employment of significant duration (longevity) . . . especially when their work ethic and habits had been observed or become known to others at Hanwha." (Doc. #44-2, "Deron Decl." at ¶ 10). Successful candidates for hourly positions at Hanwha "provided resumes reflecting a consistent effort to become and remain employed (or self-employed)." (*Id.* at ¶ 13). Due to the start-up nature of the facility, Hanwha had to be "very careful" with making hiring decisions because employee duties were "reasonably complex" and assignments were "flexibl[e]." (*Id.* ¶ 9). Another hiring consideration was that Hanwha was investing in employee training, "including training imparted by engineers on site from Korea for the first months of the Monroe operation." (*Id.*). Thus, an "applicant's ability to consistently show up for work was important

13

and valuable" because Hanwha "would have been significantly impaired by turnover and poor attendance." (*Id.*).

Deron was hired for a human resources position in October 2013, and one of her "first significant responsibilities" was to evaluate and hire employees for hourly positions. (*Id.* at ¶¶ 1, 8). According to Deron, between October 2013 and June 2015, "Hanwha filled 23 hourly positions at the . . . Monroe facility: two through transfers and 21 through new hires." (*Id.* at ¶ 6). Two of the newly-hired positions – maintenance technician and quality technician – required "highly specialized experience," and the other nineteen positions "were more sophisticated than people might assume."[9] (*Id.* at ¶¶ 6-7). Deron made an initial review of the resumes submitted to Hanwha to determine whether they "reflected the stability, longevity and experience that met Hanwha's needs." (*Id.* at ¶ 11). In her view, past employment history was a "good predictor" of future performance. (*Id.* at ¶ 10).

Deron found that Chappell's resume did not reflect stability, longevity, or relevant experience, so it did not prompt her to consider him for an interview. (*Id.* at ¶ 12). Deron points out that he listed six jobs, but only five of them had employment dates. (*Id.*). Deron concluded that Chappell having all five of these jobs between two and six months did not suggest stability or longevity. (*Id.*). Meanwhile, other candidates demonstrated an ability to hold a job for at least one year and therefore showed "better stability and longevity" than Chappell. (*Id.* at ¶ 13).

During his deposition, Chappell acknowledged that because he did not specify the dates in which he had worked at Winn Dixie, his resume reflects him having held no job for more than

---

[9] Deron explained that "all of Hanwha's operator positions might be required to perform any of the jobs in the facility, including operating Hanwha's Bead Foam Reactor, where one person operates a large-scale operation." (Deron Decl. at ¶ 7). Here, a single person is "regulating pressurization and molding characteristics in accordance with specifications, integrating computer data and controls with the physical operations required to produce a bead foam product and orienting to a production and shipping schedule." (*Id.*).

14

six months. (Chappell Dep. at 43-44, 69). He contends that this short-term work history is due to him having moved to Florida to try to make a higher hourly wage. (Doc. #49 at 4). He also claims that he is "not old enough to have [an] extensive work history" (*id.*), even though he graduated from high school in 2007. (Doc. #44-5 at 3). Chappell admitted that he has no experience with machine repair or machine maintenance. (Chappell Dep. at 47-48). Furthermore, he did not mention his experience driving a hi-lo in his resume, and his resume did not include the name of a Hanwha employee who was willing to serve as a reference or recommender on his behalf. (*Id.* at 48-49).

The foregoing establishes that Chappell failed to raise a material question of fact that he was qualified for the job he applied for at Hanwha.[10] He therefore cannot establish a *prima facie* claim of race discrimination.

Instead of presenting the evidence required to satisfy his burden, Chappell's response to Hanwha and Deron's motion for summary judgment merely alleges that Defendants "failed to hire 'dark skin' Black[] people" and instead hired Caucasians and "'light skin' Bi-racial people." (Doc. #49 at 3, 7). Chappell now seeks to distinguish himself and other "dark skinned" African Americans from "light skinned" and "bi-racial" applicants. (*Id.* at 1, 7-8). Chappell alleges that his resume was not considered because of the color of his skin. (*Id.* at 4, 6). He alleges that he is still being discriminated against because Hanwha continues to carry out this discriminatory hiring practice. (*Id.* at 4). He makes an unsupported argument that "'bi-racial' is its own classification," so he believes it is "wrong" for Defendants to classify "bi-racial as black" in stating that they hired African Americans for hourly positions at Hanwha. (*Id.* at 1, 7).

---

[10] Chappell's testimony that he should have been hired because he delivered three copies of his resume to the facility and called numerous times does not raise a material question of fact because him dropping off multiple copies of the same document and making phone calls does not relate to a "qualification" for performing the required tasks of the job. (Chappell Dep. at 68).

15

Chappell provides the names of individuals who he claims were hired by Hanwha. But he either is mistaken about them being offered employment or fails to show that his qualifications were similar to theirs. "Where a plaintiff fails to establish that his qualifications were similar to the qualifications of non-protected class employees, summary judgment in favor of the defendant-employer is proper." *Thomas*, 910 F. Supp. at 1287. Chappell alleges that Hanwha hired a "bi-racial" individual called Anna Watkins, even though she has "no work history."[11] (Doc. #49 at 4) (emphasis in original). He asserts that he did not have access to Watkins' resume because Defendants did not provide it to him as part of discovery. (*Id.*). But in Defendants' reply, Deron avers that Hanwha received a resume from someone called Anastasia Watkins – not Anna Watkins – and that this person was not hired.[12] (Doc. #52-4, Deron Decl. II at ¶ 1). Moreover, Deron testified that "Hanwha has never hired an employee by the name of Anna Watkins at its Monroe, Michigan plant." (*Id.*). Chappell provided no contrary evidence.

Chappell further alleges that Lee was hired by Hanwha "because he is bi-racial." (Doc. #49 at 6). A review of Lee's resume, however, shows that his qualifications clearly distinguish him from Chappell as an applicant. Lee had continuous employment between June 2004 through when he applied to work at Hanwha and held multiple jobs for more than one year. (Doc. #44-7 at 2). He also had four years of hi-lo experience, six years of pallet jack experience, and numerous certifications. (*Id.*). The law is clear that Chappell "cannot create an issue of fact . . . by questioning the soundness of an employer's business decision," *Thomas*, 910 F. Supp. at 1287, in this case, Hanwha's decision to hire individuals such as Lee with qualifications it found

---

[11] In later sections, Chappell states that Watkins had "sporadic" work history. (Doc. #49 at 5-6).

[12] Defendants provided a copy of Anastasia Watkins' resume, which indicates that she held continuous employment for at least three and a half years, starting in January 2010. (Doc. #52-3 at 2).

16

Chappell not to possess, such as stability, longevity, and relevant work experience.

> b. *Chappell has not Shown that, After he was Rejected, Hanwha Continued to Seek Other Applicants with his Qualifications*

Chappell has also not established the fourth element of a *prima facie* case of race discrimination because he has not shown that, after he was rejected, Hanwha continued to seek other applicants with his qualifications. Hanwha and Deron point out that Deron "reviewed resumes for past employment experiences, qualifications, time between jobs and length of service on jobs" to pick candidates that demonstrated stability and longevity. (Doc. #44 at 21). This was important to Hanwha, given its nature as a start-up operation. (*Id.*).

As explained above, Chappell has not shown that he possessed these qualifications. Nor has he provided evidence that Hanwha sought out, or hired, applicants with his qualifications. Chappell asserts that months after he applied to Hanwha, Deron told him that "they were no longer hiring and ended up hiring Cor[e]y Metdepenningen." (Doc. #49 at 5). But Chappell's resume and Metdepenningen's resume do not reflect the same qualifications. (Doc. #44-6 at 2; *see supra* note 7). Moreover, during his deposition, Chappell identified Lee as an applicant whose resume was "not stronger" than his. (Chappell Dep. at 64). Yet, as discussed above, Lee's resume indicates otherwise. (Doc. #44-7 at 2). Chappell was unable to identify any other applicant with "inferior" qualifications who was hired. (Chappell Dep. at 65).

For the reasons set forth above, Chappell has not met his burden of establishing the elements of a *prima facie* racial discrimination case. Hanwha and Deron's summary judgment motion should therefore be granted.

> 2. <u>Chappell has not Shown that Hanwha and Deron's Proffered Reasons for not Hiring him were Merely a Pretext</u>

Even if Chappell could establish a *prima facie* case of racial discrimination, summary

judgment would still be appropriate because he has not established that Hanwha and Deron's proffered reasons for not hiring him are pretextual. As previously discussed, Hanwha and Deron proffered evidence that Chappell was not hired because he lacked the necessary qualifications for the job, not because of his race. The burden then shifted back to Chappell "to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination." *Thomas*, 910 F. Supp. at 1287-88 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). "To establish pretext, the plaintiff must show '*both*, that the reason was false, *and* that discrimination was the real reason.'" *Id.* (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)) (emphasis in original) ("[D]enial of reason is not enough to establish pretext."). As laid out above, to prove pretext, the plaintiff must show that: "(1) the stated reasons had no basis in fact, (2) the stated reasons were not the actual reasons, or (3) the stated reasons were insufficient to explain the defendant's actions." *Aquino*, 158 F. App'x at 675. Chappell has not made this showing.

Hanwha and Deron argue that Chappell's assertions – for example, that he knows of other African Americans who were not hired, that he should have been invited to interview regardless of the contents of his resume, and that Deron should have perceived that he worked at Winn Dixie for over one year – do not cast doubt on Hanwha's reasons for not selecting him for an interview. (Doc. #44 at 22-23). When asked during his deposition if he believed that Hanwha's stated reasons of stability and longevity were "false" reasons for not hiring him, Chappell merely stated that his failure to include the time frame of his job at Winn Dixie was "no reason to not give [him] a chance." (Chappell Dep. at 68). But the fact that his resume did not reflect that he had held a job for an appreciable period of time most certainly is a legitimate reason not to have interviewed him given the desired qualifications described by Deron, which

18

Chappell does not challenge. Chappell's statement in his response brief that "Hanwha used work history and anything else to keep blacks (African Americans) from seeking employment at Hanwha" (Doc. #49 at 5) is not proof of pretext. Chappell has presented no evidence to raise a genuine issue of material fact that the reasons Hanwha and Deron have provided are false and/or that race played any part in their hiring decision.

Instead, Chappell merely *alleges* discrimination. For instance, he alleges that he was denied employment because of the color of his skin and that Deron's actions are discriminatory. (Doc. #49 at 4, 6-8). But the law is clear that such "self-serving and conclusory allegations are insufficient to withstand a motion for summary judgment." *Evans v. Jay Instrument & Specialty Co.*, 889 F. Supp. 302, 310 (S.D. Ohio 1995) (citing *Anderson*, 477 U.S. at 248; *Bryant v. Kentucky,* 490 F.2d 1273 (6th Cir. 1974)).

In sum, Chappell has presented no evidence to suggest that Hanwha and Deron did not select him as a candidate for employment based on his race, rather than because his resume indicated that he lacked numerous qualifications that Hanwha and Deron considered important – and that many other applicants possessed. Accordingly, Hanwha and Deron are entitled to summary judgment. *Macdonald-Bass*, 2010 WL 2990100, at *10 (granting summary judgment where "the evidence of record does not allow the conclusion that 'a jury could reasonably reject the employer's explanation for its decisions'").

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants Hanwha and Deron's Motion for Summary Judgment **(Doc. #44)** be **GRANTED**.

Dated: May 26, 2017  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 26, 2017.

                                              s/Eddrey O. Butts
                                              EDDREY O. BUTTS
                                              Case Manager